Our second case of the morning is case number 117424, People of the State of Illinois v. Zanoffia McFadden. Are you ready to proceed? May it please the court. My name is John Nowak. I'm an assistant state's attorney from Cook County, and I represent the people of the state of Illinois in this case. Felony convictions have consequences. Those consequences include a likely term of imprisonment and a bar on possessing firearms. Illinois' unlawful use of a weapon by a felon statute is simple. It bars felons from possessing guns. Here, this defendant had a conviction, a felony conviction on the books at the time he possessed this weapon and had the status of a felon. This was undisputed at trial. The party stipulated to it, and the defendant expressly agreed to the fact that he had a 2002 AUW conviction on the record, on the books, when he possessed that gun on January 28, 2008. As the United States Supreme Court held in Lewis, as all 11 federal circuit courts of appeals have held in 15 other states, it is the fact of his felony status at the time of that weapon possession that controls, not the continued validity of it after the fact. Now, of course, the Class IV form of AUW and Section A3A of that statute is facially unconstitutional, void ab initio. There's no dispute to that. That is what this court held in Aguilar. There's no dispute. Dozens and dozens of defendants, in fact, after Aguilar have come into the circuit court of Cook County and petitioned to have those Class IV form of AUW vacated, and our offices agreed to every single one of them. So holding an accord with Lewis and the vast majority of jurisdictions across this country will have simply no impact on the void ab initio doctrine in this state. Absolutely no impact on it whatsoever. That AUW statute, that Class IV form is void ab initio, but the consequences of those already convicted under that particular section remain until that defendant, those defendants go to court and have it vacated. The void ab initio doctrine does not rewrite history as to the status of that conviction in the past. He had that on the books on that date, a felony conviction. Defendant knew it when he possessed that gun that day in 2008. The consequences don't disappear until the defendant goes to court and has it vacated. For instance, after Aguilar, the Illinois Department of Corrections did not, the next day, automatically open the doors to the prison to every single person who was in prison on a Class IV form of AUW and release them without a court order, even though the statute is void ab initio. The unlawful use of a weapon by a felon statute, Your Honor, simply does not contain a self-help exception. Convicted felons cannot decide for themselves that they haven't actually been convicted of a felony so that they can actually go out and possess a gun. They don't have that right to engage in self-help. Just like it's no different than a defendant deciding for himself that he hasn't actually been convicted of a felony so he can release himself from prison. He can escape with no consequences. In both cases, in both instances, a defendant must go to court and have that conviction vacated before he can leave prison and before he may possess a gun. And that's why comparing this AUW by a felon statute to the offense of escape is important because both statutes use that same phrase of convicted of a felony. A person who has been convicted of a felony may not intentionally escape from a penal institution. Likewise, a person who has been convicted of a felony may not possess a firearm. Before either may occur, defendants must go to court and have that conviction vacated. But under the appellate court's logic here, the person who escaped from prison either before or after Aiguilar, while being incarcerated for that class 4 form of AUW, actually was not guilty of escape. Under the appellate court's logic, the state would be unable to prove the element of being convicted of a felony because now that statute itself is void admonition. But of course, that's an absurd result. That fact of conviction remains until the defendants go into court and have it vacated. And the same applies to escaping and the same applies to possessing a firearm. Felons may not do either until they go to court and have that conviction vacated. And it's that certainty as to the status of the felony on the date of possession that matters. And that's where this court's decision in People v. Elliott comes into play in its analogies. In Elliott, it involved driving on a suspended license. And here, in deciding the issue of whether the status of driving on a suspended license could be changed after the fact of driving on it by having that suspension revoked, this is what this court said, and it directly applies in this case. Quote, clearly, it is the reading that makes criminal culpability certain. As drivers who know that driving on a suspended license is a crime, irrespective of any future rescission, they are less likely to drive on a suspended license than those who believe there is a chance of escaping criminal culpability for such conduct via rescission, end quote. That rationale applies equally here to felons who possess guns under the UUW by a felon statute. It should be read, as the plain language of the statute makes clear, to make criminal culpability certain. So felons know that possessing a firearm while they still have a felony conviction on the books is an offense, it is a crime, it is the crime of UUW by a felon. Is that, is that, that's the rule you're asking this court to adopt? Would that be the case even if the offense was committed after Aguilar, the possessionary offense? If, yes, if the defendant actually hasn't had that conviction vacated yet after Aguilar, if he hasn't had it vacated before he possesses that weapon, then before or after Aguilar, it's, that part is irrelevant. It's having, he must have that conviction vacated before he possesses the weapon. So even after Aguilar, if that defendant hasn't had that conviction vacated yet, he's guilty of UUW by a felon. And again, this is, this all goes down in the same thing, like a defendant who is currently in prison right after Aguilar could not decide for himself to leave prison on his own because he would obviously need a court order to do that. And before he may possess a firearm, likewise, he needs a court order to have that conviction vacated before he can do that. And this, this rule holds true across the country. And because these felon, these felon and possession statutes are relatively simple. And in fact, in many of these other cases from the federal circuits and across the country, those defendants, after they were, possessed a weapon, actually many of them went into court and had that predicate conviction declared. Void ab initio, expunged ab initio, expunged or vacated non-proton, dating back to a time before the felony possession. So they actually went to court after the felony possession and got an order saying, dating back to before the possession, that that, wiping it off the books. But the fact that it actually was on the books when that defendant possessed the weapon, these courts, 27 jurisdictions to three that go the way the appellate court did, have held, after the fact, having it vacated after the fact is irrelevant. Which of the cases that you cite in your briefs involve a similar situation as here, where the statute that served as a predicate felony was later found unconstitutional? Of the cases we cite, none of them involve a statute that's been declared unconstitutional, but many of them involve convictions that were predicated and, and obtained in violation of a constitutional right or amendment. Beginning, of course, first and foremost, with Lewis. In Lewis, there, the predicate conviction was constitutionally invalid. So it's essentially, it's analogous. It's analogous because the court said in Lewis, even though we know that we would have gone back in time and we'd vacate that retroactively,  But wasn't the fact that Lewis was decided prior to the Heller case make any difference? It does not, Your Honor. Why? Because Heller and McDonald and Moore and Hagelar, they all hold, they all make clear that felons may not possess weapons. And here, even though the statute itself, that AUW Class IV form is void of an issue, he was, on January 28, 2008, a convicted felon. And post-Heller, it's clear that felons may not possess weapons. They may not possess firearms. So even after Heller and all the cases following that, this defendant had a felony conviction on his record at the time he possessed the weapon. And again, Your Honors, there is no self-help exception in the AUW by a felon statute. Before he may possess a gun, he must go to court and have that conviction vacated. There is, however, one statutory exception for prior conviction, other than there is no prior conviction exception, but there is one statutory exception in the AUW by a felon statute. And that is for those who haven't had a conviction vacated yet. And that is, this is the one exception in the statute. And that is to be granted relief by the Director of the State Police under Section 10C of the Firearm Owners Identification Card Act. And there, the defendant would have to show that he hasn't had a forcible felony in the last 20 years and that his criminal history and reputation are not likely to be a danger to the public and it's not contrary to public interest. That is the one statutory exception for felons to possess a gun under the AUW by a felon statute. But in the cases that you cite, the predicate offense that was later struck down as unconstitutional for exercising the guaranteed right, none invoke the void abominational doctrine as this does. Not as to a statute, but many of them involve convictions that were later actually declared void abominational. The predicate offense. The predicate offense. The predicate offense. And again, Your Honors, to hold as the appellate court did here and say that to extend the void abominational doctrine in a way that it never has been before, Your Honors, to say that convicted of a felony element can't be proven anymore after the fact, even though that conviction was actually on the books, would be to say that, again, equating it to escaping from prison, again, that would say that any defendant who was in Class 4 form of AUW in prison at the time may now, right now, even before Aguilar, could have released himself from prison because the state wouldn't be, under the appellate court's logic, able to prove the element of convicted of a felony. But the fact is that conviction of a felony is on the books and was on the books. And before the defendant may engage in self-help, his form of self-help is to go to court and have that conviction vacated before he takes the law into his own hands and arms himself or frees himself from prison. In conclusion, Your Honors, again, the AUW by a Felon statute is simple. Felons may not possess guns. Under Lewis and the vast majority of jurisdictions across this country, that continued validity of the predicate after the effect of possession is irrelevant. This defendant admitted at trial he was an AUW felon on January 28, 2008, when he possessed this firearm. For these reasons and those in our brief, we ask that this court reverse the appellate court on this point and affirm defendant's unlawful use of a weapon by a felon conviction. Thank you. Ma'am, can I ask you a record question before you begin your argument? Yes. The indictment in this case indicates that the defendant was charged with unlawful use of a weapon by a felon, and the felony that was pled in the indictment was that he had been previously convicted of Section 24-1.1A. And we all know, of course, that's the aggravated unlawful use of weapon statute. We also know that there are many different aggravating elements, whether it's not having an FYD card or being under 21. We understand that Aguilar dealt with a section that the aggravation is possession of an uncased loaded weapon, and then we also know that there are two types of that element, apparently of a Class II and a Class IV felony. Okay, so is there anything in this record that tells us that his prior conviction was a Class IV uncased unloaded? Counsel, before you answer, would you kindly identify yourself for the record? Sure. Good morning, Your Honors. My name is Pamela Rubio, and I represent Onofre McFadden. Thank you. You may answer the question. Yes, Your Honor. In my supplemental brief in the appendix in the appellate court level, I included copies of the indictment from the 2002 case, and so it's clear that he pled guilty to the first count of the six-count indictment, and that was A13A. Did it indicate whether it was a Class II or a Class IV? He received one year probation, so I'm assuming that he got the Class IV, but it's not specific in the indictment or in the indictment in the 2008 case. This case is a reasonable-doubt argument, pure and simple. The question here is easy. Was Onofre McFadden proven guilty of unlawful use of a weapon by a felon? And the answer is no, because the state failed to prove an essential element of the offense based on the way the state chose to charge the predicate. The state chose to charge the predicate of the UUWF charge by using his prior AUUW conviction. And as this court has said, that conviction is void ab initio, so it cannot be used to establish the element of felony status in the UUWF conviction. The void ab initio doctrine is well-founded in Illinois. The doctrine is based on a theory that an unconstitutional act is not a law. It confers no rights and imposes no duties. It is in legal contemplation as an operative as though it never existed. Counsel, Ms. Rubio, is there any logical reason for treating defendants differently based on how or why the earlier conviction is vacated? Let me give you an example. Assume a defendant who is later found to be innocent of the earlier offense. A videotape surfaces that shows someone else committing the crime, and the defendant pursues post-conviction proceeding based on actual innocence. Why should his UUWF conviction stand but this defendant's be vacated? Should the law distinguish between someone whose earlier conviction is bad because he didn't commit the crime and someone whose earlier conviction is bad because it was based on a void statute? Is there any logical distinction to be made there? Well, there is a distinction because when the defendant in a situation that was eventually exonerated of the prior was charged and prosecuted, he was charged and prosecuted for a crime. And in application of the void ab initio doctrine to a statute that criminalized constitutionally protected conduct, it's as if that law never existed. And so there is a distinction there. And this court has not failed. But an argument could be made, couldn't it, that the former, the one who was actually innocent, was actually more sympathetic because he didn't violate any existing criminal statute at the time. That's true. You know, he might seem more sympathetic, but the void ab initio doctrine has been applied in this fashion for years and years in Illinois. And I guess you could say it's equally sympathetic. I mean, I guess it's up to your point of view on that. But, you know. But one's UUWF conviction stands and the other doesn't. Correct. But the point is, in this case, the ag UUW conviction was a conviction based on innocent conduct. So there is some sympathy involved in that, too. This court has said that, you know, in Aguilar, that this court placed a particular conduct covered by the AUW statute beyond the state's power to punish. And so by the state using the AUUW conduct, again, to punish somebody under the UUWF statute, it's like using Russian dolls. It's still punishing, doing an end run around Aguilar, in effect. So if this court accepts the state's reading of the UUWF statute, it actually subjects the UUWF statute, which has so far not been declared unconstitutional, it would subject it to constitutional attack under the Second Amendment and due process. Are you suggesting that the conviction was automatically vacated when Aguilar was decided? It was void. Void ab initio. So it's as if it never existed. So then the state brought up a number of scenarios where people go to the warden and say, I want out. Is that okay? I think that's an unrealistic argument to make. There are legal and Department of Corrections processes that need to be done in order to get out of prison. I think that's an unrealistic argument that puts this way beyond what is going on in this case. It's not going to open up the floodgates. In fact, this court has not wavered from the void ab initio doctrine in circumstances such as the aggravated arson cases where people committed crimes and committed conduct that was later declared void ab initio because the statute didn't punish criminal conduct. And this court had no problem in those cases to declare those convictions void. It's not about the defendant's mental state at the time. It's about whether this crime was actually a crime. So the defendant doesn't have to take any action to have his conviction vacated under an unconstitutional statute? Is that correct? Not in order to challenge a conviction under that unconstitutional statute, no. Again, we're talking about a reasonable doubt argument here. What he needs to do paperwork-wise to get out of prison, that's a whole other story. What we're talking about here is the validity of his UUWF conviction. And the state is claiming that it's a self-help type of argument, but really it boils down to reasonable doubt. The state's cases are completely distinguishable. As this court has noted, none of the cases involve void ab initio doctrine. There are a few cases that use the word void in reference to the predicates, but those predicates were voided, if you will, for a procedural infirmity, such as like a Brady violation or a lack of counsel. None of those cases involve a situation here, where the state was using a statute to criminalize constitutionally protected conduct. And so those cases shouldn't persuade this court to do away with stare decisis on the void ab initio doctrine as it's been applied in this state for years. And just to show you again the unrealistic aspect of the state's argument, they're saying that even if Onafia McFadden goes into court and asks the court to vacate his aggravated unlawful use of a weapon conviction, he's still guilty of UUWF because the state charged him with aggravated unlawful use of a weapon in this case. I think it would violate due process guarantees to forever punish those people branded as felons when that branding shouldn't have even occurred in the first place. A simple example would be to swap out the term felony involved with some more obviously irreproachable statute like the right to interracial marriage. The state's argument, if you apply it to that, if somebody was convicted 30 years ago of interracial marriage, that was a felony on the books back then, it's obviously void ab initio. If he didn't happen to go into court and ask that it get vacated and then he picks up a weapon, he shouldn't be able to be convicted of unlawful use of a weapon by a felon for having that predicate on his criminal background. Help me to understand your reasonable doubt argument. Is it based upon the fact that the state could not prove the predicate felony or predicate conviction because there was no such conviction as void ab initio? Correct. So does the reasonable doubt differ based upon the time when the statute is declared void? At the time of the conviction it's okay, he was proven guilty beyond a reasonable doubt, but later that has changed? No, because the void ab initio doctrine works to declare the statute at issue void from the time of its enactment, and that's been the way this state has applied it. So that prior conviction was never valid because the statute was never valid. So it didn't matter, and again, those aggravated arson cases, those people set fires, those statutes were technically on the books and they still remain on the books, but they have no legal effect. We can't erase the past, but we cannot use those statutes and we cannot recognize them as valid law. And they could not be used up until the time they were declared invalid? Correct. How would you know that? Because of the case law in this state on void ab initio. And how would you know that you're prosecuting someone under a statute that might later be declared invalid? I guess you wouldn't know when you're charging. Obviously the state didn't know when they charged this, otherwise they wouldn't have charged it the way they did. And that's another reason that this court should affirm the appellate court's decision here. This is not going to open up the floodgates. This is going to affect quite a limited number of cases because the state is no longer going to be charging the predicate under the unconstitutional AUDW statute. They'll find another felony or they'll charge it a different fashion, so that won't happen for much, won't happen anymore. So it will affect only a handful of cases, ONAFI is included. How does the fact that you say this is a reasonable doubt argument, how does the fact that the defendant stipulated to this conviction affect that argument? It doesn't affect it. Again, I think it was, if you put yourself in their shoes at the time, it was very common to stipulate to the prior because nobody knew at the time that AUDW would have been declared void ab initio. But again, go back to void ab initio and you can't be convicted of a law that didn't exist. And so you can't stipulate to your own guilt. I believe there's at least one case that I cited to that you can't stipulate or plead guilty to an unconstitutional law. And that would be the same scenario. You can't, like you can't plead guilty to an unconstitutional law, you likewise can't stipulate to an element of the offense based on a prior that is void ab initio. Should we be concerned about the ramifications of a decision that would adopt your position, which seems to indicate that all of the convictions would be void and people should not have to do anything to avoid the results of that conviction, such as being incarcerated? I don't believe that. I'm not really sure of your question. How will this affect in any case where a person has been convicted, served 20 years, and then later that statute under which the person is convicted is declared unconstitutional? What's the status of that individual who's still in prison? Well, I guess it would depend on the status of their court proceeding. Are they in court? Do they have jurisdiction? Can they file something? It would just depend on the circumstance. Should we be concerned about the ramifications? The state has seemed to say it's a very practical approach to say what the time of the charge, if there was a conviction, that's easy. We know how to enforce that. Yours might be a little more difficult. Should that be a concern of ours? I don't believe so. Obviously, it would be in anyone's best interest to go into court and try to get their prior vacated before they go and possess a weapon. But again, we're talking about whether or not the defendant was proven guilty of this offense. Again, I think that the state's concerns are unrealistic. There are a lot of ways that the defendant can attack his prior conviction, and many people will probably do that. But we're just talking about a limited number of people whose predicates were based on this unconstitutional law. So I don't believe that that's an actual concern for future reference. And again, we're here because of Aguilar, and we can't unwring that vow, nor are we asking to, but these are the consequences that result from when a statute is declared unconstitutional. So once these things get straightened out, and once certain scenarios get addressed by this court, it's unlikely that future conflicts will arise in this context. If there are no further questions, I'll conclude. Where the statute is violative of constitutional guarantees, it's this court's duty not only to declare the legislative act unconstitutional and void, but also to correct the wrongs brought through such an act. And by affirming the appellate court's decision in this case, this court would be doing just that. It would be correcting the wrongs that were created by the unconstitutional statute of aggravated unlawful use of a weapon, and the state's attempted use to re-punish someone for the constitutional conduct. So therefore, this court should affirm the appellate court's decision in this case, and also remand the case for resentencing on Mr. McFadden's armed robbery convictions. Thank you. Your Honors, we are not asking for an end round around Aguilar. Not in no way whatsoever. We are not arguing that this defendant's 2002 aggravated unlawful use of conviction, aggravated AUW conviction is still valid. That is not before this court, and we are not making that argument. This defendant was proven guilty, not just beyond a reasonable doubt, but beyond all doubt, that he was, in the phrases of the UUW by a felon statute, he had been convicted of a felony when he possessed that weapon on January 28, 2008. The state is not asking for any change whatsoever to this court's void ab initio doctrine. None whatsoever. Class IV form of AUW is void ab initio, but the fact of those convicted under that statute remain until the defendant actually goes to court and has that conviction vacated. And it's true, as we argue in our briefs, this is not limited simply to statutes that are declared void ab initio. No matter what the reason why, that predicate conviction is later invalidated in the future, whether it's for this reason or, as Justice Thomas was asking about, for reasonable doubt. To have that conviction be undermined after the fact of possession, it encourages defendants to engage in self-help. This defendant had to have that conviction vacated before he possessed the weapon in this case. By adopting the appellate court's rationale here, it would be to encourage self-help in these kind of instances. After a fact of conviction, the consequences remain until the defendant actually goes to court and has that conviction vacated. That same convicted of a felony element is in the escape statute as it is in the AUW by a felon statute. And to say after the fact, after the fact of possession, when that conviction is on the books, the state failed to prove that he was convicted of a felony on that date would result in an absurdity. He was convicted that day. He agreed to it on the record at trial. There's also no due process issue here whatsoever, beginning with the U.S. Supreme Court's decision in Lewis and following through the myriad of other cases. And this is the Bailey case that we cite in our brief from the Oregon Supreme Court in 2007 addressed this directly. And it said the following. Lewis stands for the proposition that no violation of due process occurs when a legislature prohibits the possession of a firearm by a person whose felony conviction actually has not been overturned, even if that conviction had been unconstitutionally obtained. There is no due process violation. And it's disingenuous to claim that there, it's inaccurate to say that this will only affect a handful of cases. There are nearly a dozen petitions for leave to appeal from Cook County pending on this court's petition for leave to appeal docket right now involving the same issue, either under the UUW by a felon statute or the armed habitual criminal statute. Decided around the same time as this case was People v. Fields from the same division of the 1st District. And that involved an armed habitual criminal predicated on a UUW or a class 4AUW. And as counsel admitted, it's during her argument, that to put yourself in the position, in the shoes at the time of those at the court, that was one of her answers. And that's right. Put yourselves in the shoes of not just litigants at trial, but the defendant on that date, on January 28, 2008. Put yourself in his shoes. He knew he had that 2002 aggravated unlawful use of weapon conviction on his background. And yet he still possessed that firearm and then went on to commit two armed robberies that day. Again, Your Honors, we are not arguing for any change to this court's void ad venitio doctrine. Convictions have consequences and those consequences remain until the defendant has that conviction vacated. For these reasons and those in our brief, we ask that this court reverse the appellate court on this issue, affirm his conviction for unlawful use of weapon by a felon and affirm his sentences for armed robbery. If we should affirm the appellate court's order vacating the conviction, what is your position on returning this remanding for a new sentencing hearing? Does the state oppose that? We would oppose that. We would oppose that. As far as the sentencing issue goes, whatever weight the trial court gave to that 2002 AUW conviction was minor. Absolutely minor. How do you determine that? Based on a number of factors. Based on his extensive criminal background, aside from that conviction, and based on the grievous facts of this case. This defendant received a concurrent sentence for two armed robberies that was just eight years above the minimum and 16 years below the maximum. This defendant, in addition to that 2002 AUW conviction, had a juvenile disposition for aggravated battery and adult convictions for aggravated battery, battery, resisting arrest, aggravated assault, criminal trespass to a vehicle, assault, driving under the influence, and a felony possession of a controlled substance with intent to deliver. And the facts of this case are egregious, and there would be no change whatsoever to no reason to remand this if this court were for some reason to adopt the appellate court's rationale here. Because this defendant committed two armed robberies over the course of 23 hours of three victims. He used a firearm. He put the gun to one of the victim's neck in the first one, to the sternum in the second one later that day. And in fact, with the second one, the victim told the defendant he didn't have any money. Would this court then be making a factual determination? No, Your Honor. It would not be making any. Because even without considering that 2002 AUW conviction in terms of sentencing for the armed robbery, it would have no change whatsoever as to how the circuit court would have weighed this case and exercised its discretion. Mr. Nowak, those prior items you just listed, are those in the record? Those are in his, in the pre-sentence investigation report. They are in his criminal history. They are in the record before this court, yes. They are in the common law record in his criminal background. And again, Your Honor, for these reasons and those that are brief, we ask that this court affirm his armed robbery sentences and affirm his conviction for unlawful use of a firearm. Thank you. Case number 117424, people of the State of Illinois v. Anafia McFadden, will be taken under advisement as agenda number two. Mr. Nowak and Ms. Rubio, thank you for your arguments today. You are excused at this time.